**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| |
|---|
| EDITOR'S PICK LUXURY, LLC, |
|       Plaintiff, |
|       v. |
| RED POINTS SOLUTIONS SL and RED POINTS INC., |
|       Defendants. |

Case No: 1:22-cv-7463-ALC

---

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS RED POINTS SOLUTIONS SL'S AND RED POINTS INC.'S**
**MOTION TO DISMISS AND FOR MANDATORY FEE-SHIFTING**

---

Rachel Maimin
Michelle L. Goldman
**LOWENSTEIN SANDLER LLP**
1251 Avenue of the Americas, 17th Floor
New York, NY 10020
Tel:  212.419.6962
Fax:  973.597.2551
rmaimin@lowenstein.com
mgoldman@lowenstein.com

*Attorneys for Defendants Red Points*
*Solutions SL and Red Points Inc.*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ........................................................................................ iii

PRELIMINARY STATEMENT .................................................................................... 1

STATEMENT OF FACTS ............................................................................................ 1

LEGAL STANDARD .................................................................................................... 2

ARGUMENT ................................................................................................................. 3

    I.     THE COMPLAINT FAILS TO STATE A CLAIM ........................................... 3

          A.    The Complaint Fails to State a Claim for Defamation (Count I) ............ 4

               1.    *The communications with Shopify are privileged.* ........................ 5

               2.    *Plaintiff fails to allege a false statement of objective fact.* ........... 9

          B.    The Complaint Fails to State a Claim for Tortious Interference with
              Contract and Prospective Business Relations (Count III) .................... 11

               1.    *Plaintiff cannot maintain an action for tortious interference with
                       prospective business relations because it fails to plead Red Points
                       acted solely out of malice or that it injured particular business
                       relationships* ........................................................................... 11

               2.    *Plaintiff cannot maintain an action for tortious interference with
                       contract because it fails to plead Red Points's intentional
                       procurement of a breach of contract and actual breach.* ............. 15

          C.    The Complaint Fails to State a Claim Under the Declaratory Judgment Act
               (Count II). ........................................................................................ 16

          D.    The Complaint Fails to State a Claim for Prima Facie Tort (Count IV) ........... 17

          E.    The Complaint Fails to State a Claim Under the Lanham Act (Count V). ........... 19

                1.    *Plaintiff fails to allege sufficient dissemination to the relevant
                       purchasing public* ..................................................................... 19

                2.    *Plaintiff fails to allege proximate causation, and so lacks standing.* .......... 21

    II.    RED POINTS SHOULD RECOVER ITS ATTORNEYS' FEES AND COSTS
          IF THE COMPLAINT IS DISMISSED. ........................................................ 23

CONCLUSION ............................................................................................................. 24

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

Cases

*16 Casa Duse, LLC v. Merkin*,
   791 F.3d 247 (2d Cir. 2015)............................................................................12

*A.V.E.L.A., Inc. v Est. of Marilyn Monroe, LLC*,
   No. 12 CIV. 4828, 2018 WL 1273343 (S.D.N.Y. Mar. 5, 2018) ............................15

*Adweek LLC v. Carnyx Grp. Ltd.*,
   No. 18-cv-09923-GHW, 2019 WL 8405297 (S.D.N.Y. June 3, 2019) ...........................22, 23

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..................................................................................2

*Bah v. Apple Inc.*,
   No. 19-cv-3539, 2020 WL 614932 (S.D.N.Y. 2020) ......................................................7

*Barone v. United States*,
   No. 12-cv-4103, 2016 WL 2658174 (S.D.N.Y. May 5, 2016) ........................................17, 19

*Beck v. Cornell Univ.*,
   42 A.D.3d 609 (3d Dep't 2007) ............................................................17, 19

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..................................................................................2

*Caesars Ent. Operating Co. v. Appaloosa Inv. L.P. I*,
   48 Misc. 3d 1212(A) (Sup. Ct. N.Y. Cnty. 2015)......................................................9

*Cambridge Cap. LLC v. Ruby Has LLC*,
   565 F. Supp. 3d 420 (S.D.N.Y. 2021).................................................11, 12, 13, 14

*CDC Newburgh Inc. v. STM Bags, LLC*,
   No. 7:22-cv-01597 (S.D.N.Y.).........................................................................1

*City of Perry, Iowa v. Procter & Gamble Co.*,
   188 F. Supp. 3d 276 (S.D.N.Y. 2016)................................................................16

*Cortec Indus., Inc. v. Sum Holding L.P.*,
   949 F.2d 42 (2d Cir. 1991).............................................................................6

*Devash LLC v. German Am. Cap. Corp.*,
   959 N.Y.S.2d 10 (1st Dep't 2013) ..............................................................11, 12

## <u>TABLE OF AUTHORITIES (cont'd)</u>

**Page(s)**

*Discover Grp., Inc. v. Lexmark Int'l, Inc.*,
    333 F. Supp. 2d 78 (E.D.N.Y. 2004) ........................................................................6

*Doherty v. N.Y. Tel. Co.*,
    202 A.D.2d 627 (2d Dep't 1994) ...........................................................................8

*Eminah Props. LLC v. Energizer Holdings, Inc.*,
    531 F. Supp. 3d 593 (E.D.N.Y. 2021) ...............................................13, 14, 19, 20

*Exec. Park Partners, LLC v. Benicci, Inc.*,
    No. 7:22-cv-02560 (S.D.N.Y.)...............................................................................1

*Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*,
    314 F.3d 48 (2d Cir. 2002).....................................................................................21

*Ferring B.V. v Allergan, Inc.*,
    4 F. Supp. 3d 612 (S.D.N.Y. 2014) .......................................................................15

*Fossil Grp., Inc. v. Angel Seller LLC*,
    No. 20-cv-2441, 2021 WL 5409605 (E.D.N.Y. Aug. 27, 2021) ...........................20

*Glob. Packaging Servs., LLC v. Glob. Printing & Packaging*,
    248 F. Supp. 3d 487 (S.D.N.Y. 2017).......................................................3, 4, 9, 12

*Gmurzynska v. Hutton*,
    257 F. Supp. 2d 621 (S.D.N.Y. 2003).....................................................................20

*Gross v. N.Y. Times Co.*,
    82 N.Y.2d 146 (1993) ..........................................................................................9, 10

*Hanspal v. Epstein*,
    No. 2:18-cv-3875, 2019 WL 4574478 (E.D.N.Y. Sept. 20, 2019).........................17

*Harris v. Mills*,
    572 F.3d 66 (2d Cir. 2009).......................................................................................2

*In re Int. Rate Swaps Antitrust Litig.*,
    351 F. Supp. 3d 698 (S.D.N.Y. 2018)................................................................14, 15

*ITC Ltd. v. Punchgini, Inc.*,
    482 F.3d 135 (2d Cir. 2007)....................................................................................20

*Jacobs v. Continuum Health Partners, Inc.*,
    7 A.D.3d 312 (1st Dep't 2004) ...............................................................................11

## TABLE OF AUTHORITIES (cont'd)

**Page(s)**

*Jonas v. Newedge USA, LLC*,
   2008 N.Y. Slip Op. 32168(U) (Sup. Ct. N.Y. Cnty. 2008).....................................................15

*Josie Maran Cosms., LLC v. Shefa Grp. LLC*,
   No. 20-cv-3702, 2022 WL 3586746 (E.D.N.Y. Aug. 22, 2022) ......................................19, 21

*Kahn v. Salomon Bros., Inc.*,
   813 F. Supp. 191 (E.D.N.Y. 1993) .............................................................................11, 12, 13

*Katz v. Travelers*,
   241 F. Supp. 3d 397 (E.D.N.Y. 2017) ...............................................................................17, 18

*Kesner v. Buhl*,
   590 F. Supp. 3d 680 (S.D.N.Y. 2022),
   *appeal docketed*, No. 22-875 (2d Cir. Apr. 11, 2022) ......................................................23, 24

*Kirch v. Liberty Media Corp.*,
   449 F.3d 388 (2d Cir. 2006)......................................................................................................15

*Kramer v. Pollock-Krasner Found.*,
    890 F. Supp. 250 (S.D.N.Y. 1995) ..........................................................................................12

*La Liberte v. Reid*,
   966 F.3d 79 (2d Cir. 2020)..................................................................................................23, 24

*Landor-St. Gelais v. Albany Int'l Corp.*,
   307 A.D.2d 671 (3d Dep't 2003) ........................................................................................17, 19

*Lavazza Premium Coffees Corp. v. Prime Line Distribs. Inc.*,
   575 F. Supp. 3d 445 (S.D.N.Y. 2021)........................................................................................4

*Leadsinger, Inc. v. Cole*,
   No. 05 Civ. 5606, 2006 WL 2320544 (S.D.N.Y. Aug. 10, 2006) ..........................................16

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   572 U.S. 118 (2014)...........................................................................................................19, 22

*Liberman v. Gelstein*,
   80 N.Y.2d 429 (1992) ................................................................................................................7

*Lines v. Cablevision Sys. Corp.*,
   No. 04 CV 2517, 2005 WL 2305010 (E.D.N.Y. Sept. 21, 2005)...........................................18

*Mann v. Abel*,
   10 N.Y.3d 271 (2008) .........................................................................................................9, 10

## TABLE OF AUTHORITIES (cont'd)

Page(s)

*McKenzie v. Dow Jones & Co.*,
   355 F. App'x 533 (2d Cir. 2009) ...........................................................................18

*McKenzie-Morris v. V.P. Records Retail Outlet, Inc.*,
   1:22-cv-1138-GHW, 2022 WL 18027555 (S.D.N.Y. Dec. 30, 2022) ..............11, 16

*Millar v. Ojima*,
   354 F. Supp. 2d 220 (E.D.N.Y. 2005) .............................................................15, 16

*MSR Tr. v. Nationstar Mortg. LLC*,
   No. 21-cv-3089, 2022 WL 3441613 (S.D.N.Y. July 28, 2022)..............................16

*Nevin v. Citibank, N.A.*,
   107 F. Supp. 2d 333 (S.D.N.Y. 2000)....................................................................18

*Palin v. N.Y. Times Co.*,
   940 F.3d 804 (2d Cir. 2019)...............................................................................4, 9

*Phelan v. Huntington Tri-Vill. Little League, Inc.*,
   16 Misc. 3d 1138(A) (Sup. Ct. Suffolk Cnty. 2007)..........................................7, 8

*Porges v. Weitz*,
   205 A.D.3d 13 (2d Dep't 2022) .........................................................................7, 8

*Premier Med. Sys., LLC v. NeuroLogica Corp.*,
   1:21-cv-1337-GHW, 2022 WL 603999 (S.D.N.Y. Feb. 28, 2022) ...................16, 17

*Res. Devs., Inc. v. Statue of Liberty-Ellis Island Found., Inc.*,
   926 F.2d 134 (2d Cir. 1991)...................................................................................20

*Reus v. ETC Hous. Corp.*,
   72 Misc. 3d 479 (Sup. Ct. Clinton Cnty. 2021) .....................................................24

*Sofi Classic S.A. de C.V. v. Hurowitz*,
   444 F. Supp. 2d 231 (S.D.N.Y. 2006).............................................................16, 17

*Sussman-Automatic Corp. v. Spa World Corp.*,
   15 F. Supp. 3d 258 (E.D.N.Y. 2014) .....................................................................20

*Tannerite Sports, LLC v. NBCUniversal News Grp.*,
   864 F.3d 236 (2d Cir. 2017)...................................................................................10

*Thai v. Cayre Grp., Ltd.*,
   726 F. Supp. 2d 323 (S.D.N.Y. 2010).......................................................4, 5, 8, 12

## <u>TABLE OF AUTHORITIES (cont'd)</u>

**Page(s)**

*Tiffany (NJ) Inc. v. eBay, Inc.*,
  600 F.3d 93 (2d Cir. 2010)...................................................................5

*U.S. Pat. & Trademark Office v. Booking.com B.V.*,
  140 S. Ct. 2298 (2020).....................................................................10

*Unlimited Cellular, Inc. v. Copper Compression LLC*,
  No. 7:22-cv-01400 (S.D.N.Y).............................................................1

*Unlimited Cellular, Inc. v. Red Points Sols. SL*,
  No. 7:21-cv-10638 (S.D.N.Y.).............................................................1

*Wolberg v. IAI N. Am., Inc.*,
  77 N.Y.S.3d 348 (1st Dep't 2018) ......................................................12

STATUTES

15 U.S.C. § 1125..................................................................3, 19, 20, 22

RULES

Fed. R. Civ. P. 12...............................................................................1, 2, 24

OTHER AUTHORITIES

Editors' Pick, www.editorspick.com (last visited Feb. 27, 2023) ...........2, 13

*Shopify Acceptable Use Policy*, Shopify, ¶ 6 (Apr. 15, 2020),
  https://www.shopify.com/legal/aup .....................................................5, 6

*Terms of Service*, Shopify, § 11 (Sept. 6, 2022),
  https://www.shopify.com/legal/terms#Dmca .........................................5, 6, 8, 14

Defendants Red Points Solutions SL and Red Points Inc. (collectively, "Red Points") respectfully submit this memorandum of law in support of their motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).  For the reasons set forth below, the Court should grant this motion and dismiss all claims, with prejudice, and award Red Points its costs and attorneys' fees.

## PRELIMINARY STATEMENT

Plaintiff Editor's Pick Luxury, LLC ("EPL" or "Plaintiff") has sued Red Points in a bad faith attempt to discourage Red Points from lawfully enforcing its clients' intellectual property rights.  This is a pattern by EPL and related entities, which have multiple similar—if not virtually, word-for-word, identical—lawsuits pending against other defendants.  *See, e.g.*, *Unlimited Cellular, Inc. v. Red Points Sols. SL*, No. 7:21-cv-10638 (S.D.N.Y.); *Unlimited Cellular, Inc. v. Copper Compression LLC*, No. 7:22-cv-01400 (S.D.N.Y); *Exec. Park Partners, LLC v. Benicci, Inc.*, No. 7:22-cv-02560 (S.D.N.Y.); *CDC Newburgh Inc. v. STM Bags, LLC*, No. 7:22-cv-01597 (S.D.N.Y.).

EPL apparently hopes that the threat of frivolous and potentially endless lawsuits will force Red Points and similar companies to settle simply to avoid the expense of litigation, and not because there is any merit whatsoever to the allegations.  This playbook is nothing new, and New York has passed mandatory fee-shifting laws to address it.  In addition to dismissal of the complaint, therefore, Red Points also respectfully requests that Your Honor award Red Points its attorneys' fees for fighting these baseless allegations.

## STATEMENT OF FACTS[1]

Red Points provides a suite of services to help companies protect their brand and other intellectual property ("IP"), including anti-piracy software, impersonation protection, and IP

---

[1]    The facts set forth herein are derived from the allegations in the Complaint, as well as documents incorporated by reference therein.  The factual allegations of the Complaint are taken as true solely for purposes of this motion except where contradicted by such documents.

infringement detection and enforcement.  The unauthorized use of IP can be devastating; eroding customer trust and irreparably diluting the IP's value, among other things.  Accordingly, the biggest names in fashion, television, print media, and videogames, among others, trust Red Points to guard against the ever-present threat of IP misappropriation and infringement by companies like EPL.  EPL resells retail products online.  It buys its inventory from manufacturers, distributors, and "other reputable sources" and then resells the products, at a discount, on e-commerce websites like Shopify, Inc. ("Shopify"), which create individual virtual "storefront[s]," *i.e.*, websites, for its merchant-subscriber customers ("Merchants"), such as EPL.  *See* Compl. ("Compl.") ¶¶ 14–16.

This case arises from Red Points's report to Shopify, pursuant to the terms of Shopify's Terms of Service, that nine of EPL's thousands of products sold through its storefront violated the IP of Red Points's clients.  *See id.* ¶¶ 34-56; *see also* Editors' Pick, www.editorspick.com (last visited Feb. 27, 2023).  This is only one of many similar lawsuits brought by EPL and related entities that were either settled or are ongoing.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While "a court must accept as true all of the allegations contained in a complaint," the court need not accept "legal conclusions." *Id.* Particularly relevant to this case, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (alteration in original) (quoting *Iqbal*, 556 U.S. at 678).

## ARGUMENT

The Complaint alleges five causes of action: (1) defamation; (2) declaratory judgment; (3) tortious interference with contract and prospective business relations; (4) *prima facie* tort; and (5) false advertising under the Lanham Act, 15 U.S.C. § 1125(a).  All of these claims fail, often for overlapping reasons.

## I.      THE COMPLAINT FAILS TO STATE A CLAIM.

The sixteen-page Complaint is composed of unreasonable inferences, conclusory allegations of law, and illogical deductions of fact.  It is well-established in this District that the "Court, even on a motion to dismiss, is not required to accept conclusory allegations—particularly allegations such as those asserted here, characterizing or attributing a state of mind of another person."  *Glob. Packaging Servs., LLC v. Glob. Printing & Packaging*, 248 F. Supp. 3d 487, 495 (S.D.N.Y. 2017).  Here, Plaintiff's core accusation relates to Red Points's purported state of mind: that Red Points "acted with actual malice." Compl. ¶ 66.  Yet, among the thousands of products Plaintiff continues to sell through its Shopify storefront, the Complaint identifies only ***nine*** instances when Red Points questioned the authenticity of four of its clients' products.  *See id.* ¶¶ 34–56.  This miniscule proportion cannot, as a matter of law or common sense, constitute "actual malice."  *Id.*[2]  These allegations undermine Plaintiff's baseless legal conclusions; the only reasonable inference to draw from the Complaint itself is that Red Points has acted in good faith in submitting these discreet, targeted DMCA Notices disputing the authenticity of a product.  This

---

[2]     The Complaint alleges the takedown of nine listings and/or products from four of Red Points's clients: Rea.deeming Beauty, Inc. d/b/a BeautyBlender ("BeautyBlender"), Age Sciences, Inc. ("Age Sciences"), JAMRM, LLC d/b/a Revision Skincare ("Revision"), and Foreo Ltd. ("Foreo").  However, EPL fails to mention that despite the removal of these nine products, it continues to sell (and maintains active listings for) products from each of these manufacturers, including, as of the time of this motion filing: (a) at least nine BeautyBlender products, (b) at least forty-eight Age Sciences products (sold under its PMD brand name), (c) at least fifty Foreo products, and (d) at least sixty-five Revision products.  *See* Declaration of Rachel Maimin, dated February 27, 2023, Exs. 1–4.

falls far short of "actual malice."  Indeed, such allegations do not constitute a cause of action for either defamation or tortious interference because, as alleged by EPL, Red Points is in the business of protecting its clients' IP, and was thus seeking to vindicate its clients' legal and economic interests.

The only reasonable inference to draw from the Complaint is that Red Points's systems were working properly, elevating **only nine** of Plaintiff's products to the point of submitting DMCA Notices.  Further, even assuming the truth of Plaintiff's unreasonable deductions and baseless legal conclusions, which the Court need not credit, *see, e.g.*, *Glob. Packaging*, 248 F. Supp. 3d at 495, the Complaint still fails to adequately plead the elements of any claim under New York law or the Lanham Act.

For these reasons, and the other reasons discussed below, the Court should dismiss the Complaint and award Red Points its reasonable attorneys' fees and costs incurred in defending against this frivolous and vexatious litigation.

A.      **The Complaint Fails to State a Claim for Defamation (Count I).**

A claim for defamation under New York law requires plausible allegations of "(1) a written defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability."  *Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019).  However, even when those elements are met, "[a] qualified privilege 'extends to a communication made by one person to another upon a subject in which both have an interest.'"  *Lavazza Premium Coffees Corp. v. Prime Line Distribs. Inc.*, 575 F. Supp. 3d 445, 478 (S.D.N.Y. 2021) (quoting *Liberman v. Gelstein*, 80 N.Y.2d 429, 437 (1992)). At the pleading stage, this "common interest" privilege can only be overcome by specific and plausible allegations of actual malice, which the Complaint does not even attempt to make.  *See Thai v. Cayre Grp., Ltd.*, 726 F. Supp. 2d 323, 330 (S.D.N.Y. 2010).  "Mere conclusory allegations

[of actual malice], or charges based upon surmise, conjecture, and suspicion are Insufficient to defeat the claim of qualified privilege." *Id.* (citation omitted).

There are two independently sufficient bases for the Court to dismiss Plaintiff's claim for defamation. First, the DMCA Notices are protected by New York's common interest privilege. Second, a DMCA Notice to Shopify is not a statement of objective fact. Rather, it is a nonactionable expression of opinion. Red Points addresses these issues in turn.

### 1. *The communications with Shopify are privileged.*

The defamation claim should be dismissed because the nine DMCA Notices that Red Points submitted to Shopify are protected by the "common interest privilege" and cannot therefore be the premise of a Complaint. Plaintiff does not dispute that Shopify and Red Points have a shared interest in reducing IP infringement. Indeed, Plaintiff acknowledges that Shopify has an interest in preventing IP infringement. *See* Compl. ¶¶ 18–22; *cf. Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F.3d 93, 102 (2d Cir. 2010) ("Tiffany also argued that eBay and the sellers of the counterfeit goods using its site were jointly and severally liable.").

Further, Shopify's "Acceptable Use Policy" expressly prohibits copyright and trademark infringement. *See Shopify Acceptable Use Policy*, Shopify, ¶ 6 (Apr. 15, 2020), https://www.shopify.com/legal/aup ("Acceptable Use Policy") (stating that merchants "may not offer goods or services, or post or upload Materials, that infringe on the copyright or trademarks of others"). To that end, Shopify has developed "policies and procedures with respect to reports of intellectual property infringement," Compl. ¶ 18, because "Shopify supports the protection of intellectual property and asks Shopify merchants to do the same," *Terms of Service*, Shopify, § 11 (Sept. 6, 2022), https://www.shopify.com/legal/terms#Dmca ("Terms of Service") (stating Shopify's "DMCA Notice and Takedown Procedure"), and has a "policy to respond to all notices of alleged copyright infringement," *id.* Shopify invites third parties, like Red Points, to submit a

"DMCA Notice to Shopify's designated agent" if they "believe[] that one of [Shopify's] merchants is infringing their intellectual property rights." *Id.* And Shopify invites these reports even if the IP owner only suspects potential infringement: indeed, Shopify's Terms of Service allow individuals to send a DMCA Notice if they "***believe[]***" the merchant is "infringing their intellectual property rights." *Id.* (emphasis added). Shopify's DMCA Notice and Takedown Procedure also states:

> Upon receiving a DMCA Notice, we may remove or disable access to the Materials claimed to be a copyright infringement. Once provided with a notice of takedown, the merchant can reply with a counter notification using our form if they object to the complaint. The original complainant has 14 business days after we receive a counter notification to seek a court order restraining the merchant from engaging in the infringing activity, otherwise we restore the material.

*Id.*[3]

For years, Red Points has worked with e-commerce websites like Shopify to accomplish this shared goal. *See* Compl. ¶¶ 18–24. For example, as Plaintiff alleges, Red Points submitted nine DMCA Notices on behalf of four of its clients notifying Shopify of suspected IP infringement. *See id.* ¶¶ 34–56. This is a quintessential example of privileged communications concerning a "common interest."

"Courts have long recognized that the public interest is served by shielding certain communications, though possibly defamatory, from litigation, rather than risk stifling them

---

[3]   The Court may consider Shopify's Terms of Service and Acceptable Use Policy in deciding this motion. When "a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the Court may "take that document into consideration in deciding the defendants' motion to dismiss, without converting the motion into one for summary judgment." *Discover Grp., Inc. v. Lexmark Int'l, Inc.*, 333 F. Supp. 2d 78, 82–83 (E.D.N.Y. 2004) (citation omitted); see *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) (explaining that when a document is integral to the complaint, a plaintiff is on notice that it might be considered by the court in a motion to dismiss).

altogether." *Porges v. Weitz*, 205 A.D.3d 13, 17–18 (2d Dep't 2022) (citation omitted). "A communication falls under the qualified privilege when the statement 'is fairly made by a person in the discharge of some public or private duty, legal or moral, or in the conduct of his own affairs, in a matter where his interest is concerned.'" *Bah v. Apple Inc.*, No. 19-cv-3539, 2020 WL 614932, at *10 (S.D.N.Y. 2020) (quoting *Toker v. Pollak*, 44 N.Y.2d 211, 219 (1978)). New York's highest court, recognizing the importance of this privilege, has warned that "the flow of information between persons sharing a common interest should not be impeded." *Liberman*, 80 N.Y.2d at 437. Courts thus construe the privilege very broadly. "Ultimately, whether the privilege applies turns on whether . . . there is a 'reasonable ground for supposing an innocent motive for giving the information, and to deprive the act of an appearance of officious intermeddling with the affairs of others.'" *Porges*, 205 A.D.3d at 18 (quoting *Lewis v. Chapman*, 16 N.Y. 369, 375 (1857)).

For example, the privilege has been applied to statements that a little league umpire made to the local Department of Parks and Recreation about a little league baseball coach. *See Phelan v. Huntington Tri-Vill. Little League, Inc.*, 16 Misc. 3d 1138(A) (Sup. Ct. Suffolk Cnty. 2007), *aff'd*, 57 A.D.3d 503 (2d Dep't 2008).[4] The *Phelan* court held that "this is a clear instance of a qualified privilege being applicable to a communication between parties with a common interest, that is: the interests in having the participating children engage in recreational activities in an atmosphere free from unsportsmanlike conduct by adults." *Id.* In another conceptually similar case, New York's Appellate Division applied the privilege to the defendant's report, via email, to a United States Tennis Association ("USTA") official that her son was being bullied by the plaintiff at USTA junior tennis tournaments. *Porges*, 205 A.D.3d at 16–19. The Second

---

[4]   The allegedly defamatory letter said that the coach, Phelan, had, among other things, "cursed at one of the umpires, his 'foul language and disruptive behavior was [sic] disgraceful' and Phelan's 'unacceptable and despicable language and behavior' were an 'embarrassment to [the HTV] organization as well as the Town of Huntington that [Phelan] said he represented.'" *Phelan*, 16 Misc. 3d 1138(A) (alterations in original).

Department "ha[d] little difficulty concluding in this case that the defendant established, *prima facie*, that her email to Bliss was protected by a qualified privilege." *Id.* at 18.  The court observed that "Society has a strong interest in not 'stifling' reports of this sort of behavior to the appropriate authorities, whether they be school officials, or, as here, sports administrators." *Id.* at 19 (quoting *Liberman*, 80 N.Y.2d at 437).

Here, as in *Phelan* and *Porges*, Red Points and Shopify have a common interest "in having the participating [sellers, *i.e.*, Merchants] engage in [commercial] activities in an atmosphere free from unsportsmanlike conduct by [IP infringers]." *Phelan*, 16 Misc. 3d 1138(A).  Red Points, on behalf of its clients, BeautyBlender, Age Sciences, Revision, and Foreo, simply reported the suspected IP infringement "to the appropriate authorit[y]," Shopify.  *Porges*, 205 A.D.3d at 19.  Because the DMCA Notices are privileged, Plaintiff's "allegations of malice are not entitled to a presumption of truthfulness." *Thai*, 726 F. Supp. 2d at 335–36.

Absent that presumption of truthfulness, the defamation claim fails because Plaintiff cannot allege any "facts to support the inference that the statement was made maliciously and for the sole purpose of defaming [Plaintiff]." *Id.* at 335 (granting motion to dismiss defamation claim); *see also Doherty v. N.Y. Tel. Co.*, 202 A.D.2d 627, 628 (2d Dep't 1994) (dismissing defamation claim and holding that the qualified privilege "is not overcome by the plaintiff's conclusory allegations that the statements were published with actual malice").  Indeed, despite the fact that Shopify permits Merchants to submit counter-notifications in response to DMCA Notices, Plaintiff fails to plead that it ever submitted any such counter-notice to Shopify or that it contested the reports and presented evidence of an authentic, non-counterfeit product.  Nor does Plaintiff allege that Red Points sought a "court order restraining the merchant from engaging in the infringing activity" which would prevent Shopify from restoring the infringing material.  *See* Terms of Service § 11 (stating Shopify's "DMCA Notice and Takedown Procedure").  Thus, Plaintiff's allegations about

Red Points maliciously submitting DMCA Notices for nine of more than one hundred of their clients' products are merely conclusory and fail to plead that Red Points acted with actual malice. *See, e.g.*, *Glob. Packaging*, 248 F. Supp. 3d at 495.

### 2. Plaintiff fails to allege a false statement of objective fact.

The defamation claim also fails because Plaintiff has not alleged the necessary element of "falsity of the defamatory statement," *Palin*, 940 F.3d at 809, which requires showing that the statement "convey[s] to the reasonable reader that [nothing] other than an objective fact is being asserted," *Gross v. N.Y. Times Co.*, 82 N.Y.2d 146, 155 (1993). Here, the Complaint alleges that Red Points submitted DMCA Notices notifying Shopify that the nine specific products may be infringing on Red Points's clients' IP. *See* Compl. ¶¶ 34–56. Submitting these nine DMCA Notices, pursuant to Shopify's own policies and procedures, cannot be reasonably interpreted as purely statements of objective fact, as opposed to protected "expressions of opinion." *Mann v. Abel*, 10 N.Y.3d 271, 275 (2008). Accordingly, the nine DMCA Notices "constitute nonactionable statements of opinion as a matter of law." *Id.* at 276. "They are expressions of opinion, not fact." *Caesars Ent. Operating Co. v. Appaloosa Inv. L.P. I*, 48 Misc. 3d 1212(A) (Sup. Ct. N.Y. Cnty. 2015) (granting motion to dismiss defamation claim over statement that company operated illegally).

The New York Court of Appeals has created a three-factor test used to determine whether a particular statement constitutes an opinion or an objective fact:

> (1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal . . . readers or listeners that what is being read or heard is likely to be opinion, not fact.

*Mann*, 10 N.Y.3d 276 (quoting *Brian v. Richardson*, 87 N.Y.2d 46, 51 (1995)).   Context is important.   For instance, "the assertion that 'John is a thief' could well be treated as an expression of opinion . . . where it is accompanied by other statements, such as 'John stole my heart.'"   *Gross*, 82 N.Y.2d at 155.   Indeed, "even when uttered or published in a more serious tone, accusations of criminality could be regarded as mere hypothesis and therefore not actionable if the facts on which they are based are fully and accurately set forth and it is clear to the reasonable reader or listener that the accusation is merely a personal surmise built upon those facts."   *Id.*   "[T]he courts are obliged to consider the communication as a whole, as well as its immediate and broader social contexts, to determine whether the reasonable listener or reader is likely to understand the remark as an assertion of provable fact."   *Id.*   In this case, the nine DMCA Notices are "merely a personal surmise" about potential infringement, and not actionable as a matter of law.   *Id.*

Intellectual property law is extremely complicated.   *See, e.g.*, *U.S. Pat. & Trademark Office v. Booking.com B.V.*, 140 S. Ct. 2298 (2020) (discussing infringement doctrines).   Shopify, a sophisticated multi-billion dollar company, obviously appreciates this (as evidenced, in part, by its DMCA Notice and Takedown Procedure).   So, there is no reason to think that Shopify understood Red Points's DMCA Notices to be defamatory statements of "objective fact."   Indeed, Shopify's Terms of Service expressly ask or encourage individuals to identify and report any listings or products that they ***believe*** infringes on their IP.   Against this backdrop, Plaintiff has failed to "plead facts that, if proven, would allow a reasonable person to consider the statement false."   *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 247 (2d Cir. 2017).

**B.**     **The Complaint Fails to State a Claim for Tortious Interference with Contract and Prospective Business Relations (Count III).**

>    ***1.     Plaintiff cannot maintain an action for tortious interference with prospective business relations because it fails to plead Red Points acted solely out of malice or that it injured particular business relationships.***

Plaintiff's claim for tortious interference suffers multiple serious flaws, any one of which warrants dismissal.  "To state a claim for tortious interference with prospective economic advantage under New York law, a plaintiff must allege that '(1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship.'"  *Cambridge Cap. LLC v. Ruby Has LLC*, 565 F. Supp. 3d 420, 472 (S.D.N.Y. 2021) (quoting *Evliyaoglu Tekstil A.S. v. Turko Textile LLC*, No. 19-cv-10769, 2020 WL 7774377, at *2 (S.D.N.Y. Dec. 30, 2020)).  Importantly, "[t]he 'wrongful means element' for this tort 'sets a high bar.'"  *McKenzie-Morris v. V.P. Records Retail Outlet, Inc.*, 1:22-cv-1138-GHW, 2022 WL 18027555, at *8 (S.D.N.Y. Dec. 30, 2022) (citation omitted).  Here, there are no well-pled allegations that Red Points (1) acted solely out of malice or used improper means or (2) injured particular business relationships.

Turning first to the issue of malice, Plaintiff fails to plausibly allege that Red Points acted solely with the desire to harm Plaintiff, "as opposed to its normal economic interest."  *Devash LLC v. German Am. Cap. Corp.*, 959 N.Y.S.2d 10, 15 (1st Dep't 2013) (citation omitted) (affirming dismissal of claims); *see, e.g.*, *Jacobs v. Continuum Health Partners, Inc.*, 7 A.D.3d 312, 313 (1st Dep't 2004) (cause of action insufficient because there were no specific allegations supporting an inference that defendants were motivated ***solely*** by a desire to harm plaintiff or that defendants' statements about plaintiff were independently wrongful); *see also Kahn v. Salomon Bros., Inc.*, 813 F. Supp. 191, 195 (E.D.N.Y. 1993) ("Under New York law where a defendant's conduct is intended even partially to advance its own interests, the misconduct must rise to the level of

-11-

fraudulent or criminal acts."); *16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 262 (2d Cir. 2015) ("When a defendant has acted with a permissible purpose, such as 'normal economic self-interest,' wrongful means have not been shown, even if the defendant was 'indifferent to the [plaintiff's] fate.'" (alteration in original) (citation omitted)).

More specifically, Plaintiff's threadbare "allegations of malice are not entitled to a presumption of truthfulness." *Thai*, 726 F. Supp. 2d at 335–36; *see also Glob. Packaging*, 248 F. Supp. 3d at 495 ("[T]his Court, even on a motion to dismiss, is not required to accept conclusory allegations."). This is especially so when, as here, the defendant is motivated by its normal economic interest. *Devash*, 959 N.Y.S.2d at 15; *16 Casa Duse*, 791 F.3d at 262; *Wolberg v. IAI N. Am., Inc.*, 77 N.Y.S.3d 348, 351 (1st Dep't 2018) (claim dismissed where defendant had an economic self-interest in alleged interference). Red Points is in the business of protecting IP from misappropriation and infringement, which it lawfully does by investigating and reporting suspected violators. In these circumstances, where, as here, the plaintiff has not alleged any facts supporting its naked assertion of "actual malice," courts routinely dismiss the claim. Thus, EPL's own allegations establish that Red Points's submission of DMCA Notices to Shopify were motivated by Red Points's economic interests and not solely by malice. *See Kramer v. Pollock-Krasner Found.*, 890 F. Supp. 250, 258 (S.D.N.Y. 1995) (dismissing claim because defendant acted out of self-interested, economic concerns).

This claim's second fatal shortcoming is its vagueness. "In order to survive a motion to dismiss, the plaintiff must allege that it was 'actually and wrongfully prevented from entering into or continuing in a ***specific*** business relationship.'" *Cambridge Cap.*, 565 F. Supp. 3d at 474 (quoting *Von Rohr Equip. Corp. v. Tanner Bolt & Nut Corp.*, No. 17-cv-2913, 2017 WL 5184676, at *7 (E.D.N.Y. Nov. 7, 2017)) (collecting cases). Plaintiff's claim for tortious interference is premised on the very same conduct by Red Points underlying its defamation claim. But Plaintiff

does not identify a single business relationship that Plaintiff has been (1) barred from consummating or (2) prevented from continuing.  *See Kahn*, 813 F. Supp. at 195 (dismissing tortious interference claim where plaintiff did not allege that "any particular business relationship . . . was prevented or discontinued").  Plaintiff alleges only (and without explanation) that the nine DMCA Notices Red Points submitted caused "declining sales, loss in market share, and a breakdown of relationship with Shopify."  Compl. ¶ 93.  But those harms, even if true, cannot as a matter of law support a claim for tortious interference with a prospective business relationship. *See Cambridge Cap.*, 565 F. Supp. 3d at 474.

Plaintiff identifies one business partner, Shopify, but Plaintiff does not allege that it has been "prevented from . . . continuing in [that] business relationship."  *Id.* (citation omitted). Notably, EPL stops short of alleging that: (1) Defendant barred EPL from consummating the relationship with Shopify; or (2) Defendant prevented EPL from continuing a relationship with Shopify.  Indeed, EPL fails to allege that the relationship with Shopify has been terminated or that any such termination was the result of Red Points's conduct.[5]  Recently, in *Eminah Properties LLC v. Energizer Holdings, Inc.*, the United States District Court for the Eastern District of New York considered and dismissed similar allegations stemming from a "Verified Rights Owner Program" ("VeRO") report to eBay.  531 F. Supp. 3d 593, 600, 607 (E.D.N.Y. 2021) (Donnelly, J.).  The plaintiff in *Eminah* "alleg[ed] that the defendants' actions caused the removal of 'listing content,' placed 'black marks' on their eBay accounts, and put their accounts at risk of suspension."  *Id.* at 607.  But the allegations in *Eminah*, just like those in this Complaint, failed to state a claim:

---

[5]   Notwithstanding Plaintiff's August 2022 allegation that "Shopify has . . . informed Plaintiff that it will shortly shut down Plaintiff's Website," Compl. ¶ 67, Plaintiff's website (*i.e.*, its "storefront")—listing more than one hundred of Red Points's clients' products (including those of BeautyBlender, Age Sciences, Revolution, and Foreo)—remains active.  *See* Editors' Pick, www.editorspick.com, (last visited Feb. 27, 2023).

> The plaintiffs do not sufficiently allege an injury to their relationship with eBay for the purpose of stating a tortious interference claim. The plaintiffs' conclusory allegation that the defendants' "actions interfered with [the] [p]laintiffs' business relationship with eBay" does not say how the relationship with eBay was damaged, nor do their allegations about what happened to their accounts.

*Id.* (alterations in original).  Absent allegations that Red Points's conduct "caused the deterioration of the business relationship" with Shopify, this claim must fail.[6]  *Id.*

Plaintiff's vague allegations that "[Red Points's] conduct has caused and will continue to cause immediate and irreparable injury to Plaintiff, including declining sales, loss in market share, and a breakdown of relationship with Shopify," Compl. ¶ 93, do nothing to save this claim.  Courts in this Circuit frequently dismiss similarly vague claims of tortious interference, for "[t]o hold otherwise would be to permit [plaintiffs] to get to discovery based on 'labels and conclusions' and not facts." *Cambridge Cap.*, 565 F. Supp. 3d at 474; *see also In re Int. Rate Swaps Antitrust Litig.*,

---

[6]   Plaintiff's allegation of interference with its relationship with Shopify is particularly baffling in light of Shopify's Terms of Service, which expressly alert any Merchant who uses Shopify, including Plaintiff, that:

> Shopify supports the protection of intellectual property and asks Shopify merchants to do the same.  It's our policy to respond to all notices of alleged copyright infringement.  If someone believes that one of our merchants is infringing their intellectual property rights, they can send a DMCA Notice to Shopify's designated agent using our form.  Upon receiving a DMCA Notice, we may remove or disable access to the Materials claimed to be a copyright infringement.

Terms of Service, § 11.  Shopify additionally explains that this DMCA Notice and Takedown Procedure means that:

> Shopify respects intellectual property rights and you should too.  If we receive a DMCA Notice, we may disable access or remove the allegedly infringing content from your Store.  If you don't think the claim is valid, you can send a counter notification.  If you believe one of our merchants is infringing your intellectual property rights, you can send Shopify a DMCA Notice.  We will expeditiously disable access or remove the content and notify the merchant.

*Id.*

351 F. Supp. 3d 698, 709–10 (S.D.N.Y. 2018) (Engelmayer, J.) (holding that plaintiff's allegation that it had "business relationships with numerous buy-side customers, including Buy Side Client 1 through 16" in support of its tortious interference claim was "too vague to survive" dismissal).

> ### 2. *Plaintiff cannot maintain an action for tortious interference with contract because it fails to plead Red Points's intentional procurement of a breach of contract and actual breach.*

EPL's claim for tortious interference with contract similarly fails.  In order to prove a tortious interference with contract, EPL must establish: (1) "the existence of a valid contract" between them and a third party; (2) Red Points's "knowledge of the contract;" (3) Red Points's "intentional procurement of the third-party's breach of the contract without justification; (4) actual breach of the contract; and (5) damages resulting therefrom." *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401–02 (2d Cir. 2006) (internal quotation marks and citation omitted).

Courts regularly dismiss claims for tortious interference of contract consisting solely of conclusory allegations that a defendant acted intentionally and caused, or intended to cause, a breach of the contract without any type of factual underpinning. *See, e.g.*, *Ferring B.V. v Allergan, Inc.*, 4 F. Supp. 3d 612, 626 (S.D.N.Y. 2014); *Jonas v. Newedge USA, LLC*, 2008 N.Y. Slip Op. 32168(U) (Sup. Ct. N.Y. Cnty. 2008) (finding allegations made "upon information and belief" with nothing more were insufficient).  More importantly, however, Plaintiff's failure to plead *actual breach*—"an essential element of [a] tortious interference with contractual relations claim"—is fatal here. *See A.V.E.L.A., Inc. v Est. of Marilyn Monroe, LLC*, No. 12 CIV. 4828, 2018 WL 1273343, at *11 (S.D.N.Y. Mar. 5, 2018) ("Under New York law, it is insufficient, for purposes of stating a viable claim for tortious interference with contract, to allege in conclusory terms that a contract existed and was breached."); *Ferring B.V.*, 4 F. Supp. 3d at 627 (denying plaintiff's motion to amend and dismissing tortious interference with contractual relations claim where no breach of contract occurred); *Millar v. Ojima*, 354 F. Supp.  2d 220, 230 (E.D.N.Y.

2005) ("In order to state a [tortious interference with contract] claim, the plaintiff is required to identify a specific contractual term that was breached." (internal quotation marks omitted)); *Leadsinger, Inc. v. Cole*, No. 05 Civ. 5606, 2006 WL 2320544, at *11–12 (S.D.N.Y. Aug. 10, 2006) (dismissing tortious interference with contract claim where party failed to adequately allege the specific breach). Plaintiff's claims for tortious interference with prospective and contractual relations must be dismissed accordingly.

### C.   The Complaint Fails to State a Claim Under the Declaratory Judgment Act (Count II).

Count II, for declaratory judgment, similarly fails. The claim should be dismissed as duplicative of other counts and even so, "directed only to past conduct." *MSR Tr. v. Nationstar Mortg. LLC*, No. 21-cv-3089, 2022 WL 3441613, at *12 (S.D.N.Y. July 28, 2022).

Declaratory judgments "are forms of relief, not independent causes of action." *McKenzie-Morris*, 2022 WL 18027555, at *12 (citing *Nat'l Union Fire Ins. Co. v. Karp*, 108 F.3d 17, 21 (2d Cir. 1997) (noting that the Declaratory Judgment Act "is procedural in nature, and merely offers an additional remedy to litigants").) Courts regularly reject declaratory judgment claims "when other claims in the suit will resolve the same issues, because, under such circumstances, a declaratory judgment will not serve any useful purpose." *Premier Med. Sys., LLC v. NeuroLogica Corp.*, 1:21-cv-1337-GHW, 2022 WL 603999, at *9 (S.D.N.Y. Feb. 28, 2022) (quotation marks and citation omitted); *see also Sofi Classic S.A. de C.V. v. Hurowitz*, 444 F. Supp. 2d 231, 249 (S.D.N.Y. 2006) ("Plaintiffs' declaratory judgment claim seeks resolution of legal issues that will, of necessity, be resolved in the course of the litigation of the other causes of action. Therefore, the claim is duplicative in that it seeks no relief that is not implicitly sought in the other causes of action."); *City of Perry, Iowa v. Procter & Gamble Co.*, 188 F. Supp. 3d 276, 286 (S.D.N.Y. 2016) ("Courts generally reject a [declaratory judgment] claim when other claims in the suit will resolve the same issues."). "In other words, where the plaintiff's rights will be adjudicated through

another claim in the litigation, the plaintiff's declaratory judgment claims will be dismissed" as duplicative. *Premier Med. Sys.*, 2022 WL 603999, at *9.

Here, Plaintiff's declaratory judgment claim is merely duplicative of its defamation and tortious interference claims. *See* Compl., ¶ 73 ("Defendants have submitted multiple reports to Shopify on behalf of their clients, falsely alleging that Plaintiff was selling counterfeit products and/or infringing on its property rights"); *Id.* ¶ 81 (seeking a declaratory judgment that "the products at issue are not counterfeit," and "that [Plaintiff] has not violated any trademark counterfeiting rights or other rights"). Accordingly, it should be dismissed. *See Premier Med. Sys.*, 2022 WL 603999, at *9 (dismissing declaratory judgment claim as duplicative of the plaintiff's breach of contract and quantum meruit claims); *Sofi Classic*, 444 F. Supp. 2d at 249–50.

### D. The Complaint Fails to State a Claim for Prima Facie Tort (Count IV).

Plaintiff's Count IV, for *prima facie* tort, fails for three independent reasons—each of which is sufficient to defeat Plaintiff's claim. First, EPL does not allege special damages—an essential element of its claim. *See, e.g.*, *Beck v. Cornell Univ.*, 42 A.D.3d 609, 610 (3d Dep't 2007); *Landor-St. Gelais v. Albany Int'l Corp.*, 307 A.D.2d 671, 673 (3d Dep't 2003); *Barone v. United States*, No. 12-cv-4103, 2016 WL 2658174, at *4 (S.D.N.Y. May 5, 2016). Second, all of the allegations underlying this cause of action relate to and underlie Plaintiff's defamation claim, and thus cannot support a separate cause of action for *prima facie* tort. *See Katz v. Travelers*, 241 F. Supp. 3d 397, 407, 409 (E.D.N.Y. 2017). Third, EPL fails to allege that malice towards it was the *sole* reason that Red Points submitted the DMCA Notices at issue to Shopify, defeating Plaintiff's claim. *See Hanspal v. Epstein*, No. 2:18-cv-3875, 2019 WL 4574478, at *5 (E.D.N.Y. Sept. 20, 2019).

"The four elements for a *prima facie* tort in New York State are: (1) intentional infliction of harm, (2) causing special damages, (3) without excuse or justification, and (4) by an act or series of acts that would otherwise be lawful." *Katz*, 241 F. Supp. 3d at 405.[7]  With respect to the first element of a *prima facie* tort cause of action, "New York courts have been very strict in holding that a cause of action for *prima facie* tort will not lie unless the actions complained of can be plausibly said to have been motivated *solely* by malice towards the plaintiff." *McKenzie v. Dow Jones & Co.*, 355 F. App'x 533, 536 (2d Cir. 2009) (emphasis in original).  Moreover, "New York courts and the Second Circuit have held that where the factual allegations underlying the *prima facie* tort cause of action relate to the dissemination of allegedly defamatory materials, that cause of action must fail." *Katz*, 241 F. Supp. 3d at 409 (internal quotation marks omitted) (quoting *McKenzie*, 355 F. App'x at 536).

Here, Plaintiff has not pled any allegations separate and apart from those underlying its defamation and/or tortious interference claims.  And, for largely the same reasons discussed in Sections I.A and I.B, *supra*, Plaintiff fails to plausibly plead Red Points's actions were "motivated *solely* by malice towards" Plaintiff.  *McKenzie*, 355 F. App'x at 536.  Even if granting Plaintiff all reasonable inferences, the facts alleged suggest that Red Points submitted the DMCA Notices, at least in part, out of economic interest.  And, as Plaintiff itself has conceded, Red Points is in the business of protecting IP from misappropriation and infringement, which it lawfully does by investigating and reporting suspected violators.  Moreover the alleged commercial and financial injury complained of by Plaintiff flows directly from the alleged reputational harm to Plaintiff

---

[7]   Importantly, *prima facie* tort is "another cause of action that is highly disfavored in New York, and "it is well settled that any claim that is covered by a traditional tort cannot be the basis for a claim of prima facie tort—even if the traditional tort claims turn out not to be viable." *Nevin v. Citibank, N.A.*, 107 F. Supp. 2d 333, 346–47 (S.D.N.Y. 2000).  And Plaintiff cannot "avoid the obstacles in bringing" its other claims "by stating a purported general tort." *Lines v. Cablevision Sys. Corp.*, No. 04 CV 2517, 2005 WL 2305010, *5 (E.D.N.Y. Sept. 21, 2005).

caused by Red Points's purportedly false and defamatory IP complaints.  Most importantly, however, Plaintiff's failure to plead special damages is fatal to its claim.  *See Beck*, 42 A.D.3d at 610; *Landor-St. Gelais*, 307 A.D.2d at 673; *Barone*, 2016 WL 2658174, at *4.

Thus, for all of these reasons, its cause of action for *prima facie* tort must be dismissed.

### E.      The Complaint Fails to State a Claim Under the Lanham Act (Count V).

There are two independently sufficient bases for the Court to dismiss Plaintiff's claim for false advertising under the Lanham Act, 15 U.S.C. § 1125(a).  First, Plaintiff's allegations do "not add up to public dissemination," a necessary element in the Second Circuit, "even [if] they resulted in the suspension of [a plaintiff]'s selling privileges."  *Josie Maran Cosms., LLC v. Shefa Grp. LLC*, No. 20-cv-3702, 2022 WL 3586746, at *6 (E.D.N.Y. Aug. 22, 2022).  Second, "[t]o invoke the Lanham Act's cause of action for false advertising, a plaintiff must plead (and ultimately prove) an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations."  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 140 (2014).  Yet Plaintiff (inexplicably) alleges that Red Points misrepresented the quality of its software and services (presumably, to its own clients).[8]  Compl. ¶¶ 102–04.  But, Plaintiff does not identify who was deceived or how.[9]

#### 1.   *Plaintiff fails to allege sufficient dissemination to the relevant purchasing public.*

Courts in the Second Circuit have consistently rejected Plaintiff's theory of false advertising based on infringement reports made to online marketplaces.  *See, e.g.*, *Josie Maran Cosms.*, 2022 WL 3586746, at *6 (granting motion to dismiss false advertising claim); *Eminah*

---

[8]    Even if Red Points had misrepresented the quality of its product (software) and deceived **Red Points's own customers** into purchasing Red Points's services, the proper plaintiff would be a Red Points customer who presumably overpaid, not Editor's Pick.

[9]    Plaintiff cannot (and does not) allege that Red Points sold or misrepresented its software to Shopify.

*Props.*, 531 F. Supp. 3d at 605 (same); *Fossil Grp., Inc. v. Angel Seller LLC*, No. 20-cv-2441, 2021
WL 5409605, at *11–12 (E.D.N.Y. Aug. 27, 2021) (denying leave to amend with a Lanham Act
claim).

> The Lanham Act provides, in relevant part, that:

>> [a]ny person who . . . , uses in commerce any word, term, name,
>> symbol, or device, or any combination thereof, or any false
>> designation of origin, false or misleading description of fact, or false
>> or misleading representation of fact . . . (B) in commercial
>> advertising or promotion, misrepresents the nature, characteristics,
>> qualities, or geographic origin of his or her or another person's
>> goods, services, or commercial activities, shall be liable in a civil
>> action by any person who believes that he or she is or is likely to be
>> damaged by such act.

15 U.S.C. § 1125(a)(1)(B).[10]  "The Second Circuit employs a three-part test to assess whether
statements constitute 'commercial advertising or promotion' under the Lanham Act: the statement
must be '(1) commercial speech, (2) made for the purpose of influencing consumers to buy
defendant's goods or services, and (3) although representations less formal than those made as part

---

[10]  Plaintiff does not specify whether its claim for "false advertising" is brought under 15 U.S.C.
§ 1125(a)(1)(A) or (B), but it appears that Plaintiff is invoking subsection (B).  Section 1125(a)
of the Lanham Act "principally provides for two distinct causes of action: false designation of
origin or source, known as 'product infringement,' and false description or representation,
known as 'false advertising.'"  *Res. Devs., Inc. v. Statue of Liberty-Ellis Island Found., Inc.*,
926 F.2d 134, 139 (2d Cir. 1991) (citation omitted).  The elements of the two differ.  To bring
a claim for false designation or product infringement, a party must (1) "demonstrate its own
right to use the mark or dress in question," (2) show that "the mark or dress is distinctive as to
the source of the good or service at issue," and (3) "there is the likelihood of confusion between
the plaintiff's good or service and that of the defendant."  *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d
135, 154 (2d Cir. 2007).  This test is most frequently associated with Section 1125(a)(1)(A).
*See id.*  To bring a claim for false description or representation or false advertising, on the other
hand, a party must show that: "(1) defendants made a false or misleading representation
regarding the nature, characteristics or quality of plaintiff's services; (2) the representations
were used in commerce; (3) the representations were made in the context of commercial
advertising or promotion; and (4) defendants' actions made plaintiff believe it would be
damaged by the representations."  *Gmurzynska v. Hutton*, 257 F. Supp. 2d 621, 628–29
(S.D.N.Y. 2003), *aff'd* 355 F.3d 206 (2d Cir. 2004).  This test is most frequently associated
with Section 1125(a)(1)(B).  *See id.*; *Sussman-Automatic Corp. v. Spa World Corp.*, 15 F.
Supp. 3d 258, 269 (E.D.N.Y. 2014).

of a classic advertising campaign may suffice, they must be disseminated sufficiently to the relevant purchasing public.'" *Josie Maran Cosms.*, 2022 WL 3586746, at *5 (quoting *Gmurzynska*, 355 F.3d at 210).

To the extent Plaintiff is alleging that Red Points's infringement reports (*i.e.*, the DMCA Notices) are "false advertising" under the Lanham Act, then it has failed to allege the second and third elements.  For one, the DMCA Notices were not "sufficiently disseminated to actual and prospective customers." *Id.* at *6.  "This is because, at the end of the day, the dissemination was to [Shopify]," and Plaintiff has not "allege[d] facts that support an inference that [Shopify] in fact distributed derogatory information to its consumers, or that [Shopify] itself is the purchasing public." *Id.* (internal quotation marks omitted) (quoting *Fossil Grp.*, 2021 WL 5409605, at *11) (dismissing false advertising claims based on report to Amazon.com); *see* Compl. ¶¶ 103, 108 (stating that Red Points made purportedly "false, misleading, and defamatory statements about Plaintiff and the Website" and that it submitted the purportedly "false" DMCA Notices to Shopify). Furthermore, even if Shopify was the "relevant purchasing public," the DMCA Notices did not reach a "sufficiently large proportion" of the relevant market to qualify for protection under the Lanham Act. *Josie Maran Cosms.*, 2022 WL 3586746, at *6 (citation omitted) (collecting cases); *see also, e.g.*, *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 58 (2d Cir. 2002) (holding that "a total of twenty-seven oral statements regarding plaintiff's products in a marketplace of thousands of customers . . . is insufficient to satisfy the requirement that representations be disseminated widely").

### 2.   *Plaintiff fails to allege proximate causation, and so lacks standing.*

Perhaps recognizing the weakness of its Lanham Act claim under ordinary theories of harm, Plaintiff takes another tack: stretching proximate cause past its breaking point.  Here, Plaintiff does not actually allege that Red Points deceived its own customers—those brands to

whom Red Points advertised its services and that pay Red Points to enforce their IP rights—about the quality of its software and services. *See* Compl. ¶¶ 102–04. Rather, Plaintiff simply claims that Red Points made "false, misleading, and defamatory statements" and that those statements deceived Shopify. *Id.* Plaintiff thus claims that "[Red Points's purported] fraud directly harms Plaintiff, by forcing the removal of [Plaintiff's] products from commerce, causing lost sales, and potentially suspending the Website," and that Plaintiff has suffered "immediate and irreparable injury . . . including shutting down the Website, declining sales, loss in market share, breakdown in relationship with Shopify, and the continued unjustified removal of Plaintiff's products from the market, for which Plaintiff has no adequate remedy at law." *Id.* ¶ 110. Plaintiff may describe its injury as "direct," but the allegations tell a very different story.

False advertising under the Lanham Act is limited to "economic or reputational injury flowing ***directly from the deception wrought by the defendant's advertising***." *Adweek LLC v. Carnyx Grp. Ltd.*, No. 18-cv-09923-GHW, 2019 WL 8405297, at *2 (S.D.N.Y. June 3, 2019) (emphasis added) (citation omitted). Thus, a plaintiff suing under Section 1125(a)

> must show . . . deception of consumers caus[ing] them to withhold trade from the plaintiff. That showing is generally not made when the deception produces injuries to a fellow commercial actor that in turn affect the plaintiff. For example, while a competitor who is forced out of business by a defendant's false advertising generally will be able to sue for its losses, the same is not true of the competitor's landlord, its electric company, and other commercial parties . . . .

*Lexmark*, 572 U.S. at 133–34.

In this case, the alleged falsehood—"[t]he capabilit[y]" of Red Points's software "to distinguish[] between authentic and counterfeit products"—has nothing to do with Plaintiff. Compl. ¶ 102. Nor does Plaintiff properly allege "that ***consumers were deceived by Defendants' false statement*** and that the deception led consumers to withhold trade from Plaintiff." *Adweek*, 2019 WL 8405297, at *2 (emphasis added) (internal quotations and citations omitted). Rather,

Plaintiff alleges that Red Points's nine DMCA Notices "deceived **_Shopify_** and are likely to deceive and confuse customers into believing that Plaintiff's products are counterfeit or are infringing on another company's product, thereby materially effecting their decision and ability to purchase Plaintiff's products."  Compl. ¶ 104 (emphasis added).  Here, if anyone was proximately harmed by the alleged "misrepresent[ation of] the capabilities of the [Red Points] software," *id.* ¶ 102, it would be Red Points's clients, BeautyBlender, Foreo, Revision, and Age Sciences, *see id.* ¶¶ 34–56, not EPL.  *See, e.g.*, *Adweek*, 2019 WL 8405297, at \*2 (granting motion to dismiss false advertising claims for lack of proximate cause).  Plaintiff does not have standing to bring this claim.

## II.   RED POINTS SHOULD RECOVER ITS ATTORNEYS' FEES AND COSTS IF THE COMPLAINT IS DISMISSED.

Red Points respectfully seeks attorneys' fees, pursuant to N.Y. Civ. Rights § 70-a, should it prevail on its motion to dismiss.  New York's anti-SLAPP law permits defendants like Red Points to make a "claim," *id.* § 70-a(1), defined in part as "any . . . filing requesting relief," *id.* § 76-a(1)(b), to recover costs and attorneys' fees where lawsuits are frivolous.  Red Points asks the Court to construe this motion to dismiss as such a "claim."  *Cf. La Liberte v. Reid*, 966 F.3d 79, 88–89, 89 n.6 (2d Cir. 2020) (rejecting anti-SLAPP fees under California's statute, but leaving open the possibility that, under New York law, a defendant could recover attorneys' fees based on a district court's Rule 12(b)(6) dismissal).  When such a claim is made, the Court "shall" award costs and attorneys' fees upon a demonstration "that the action involving public petition and participation was commenced or continued without a substantial basis in fact and law and could not be supported by a substantial argument for the extension, modification or reversal of existing law."  N.Y. Civ. Rights § 70-a(1)(a).

Red Points is not asking the Court to impose a different or higher burden on Plaintiff at the pleading stage than that imposed by the Federal Rules of Civil Procedure.  *See Kesner v. Buhl*, 590

F. Supp. 3d 680, 701 (S.D.N.Y. 2022), *appeal docketed*, No. 22-875 (2d Cir. Apr. 11, 2022) (holding that the anti-SLAPP statute's "less plaintiff-friendly [pleading] standard" conflicted with Federal Rule of Civil Procedure 12).   Red Points acknowledges that the more lenient pleading standard of Rule 12 applies here.   Red Point asks, however, for an award of fees and costs if the Complaint cannot even survive under Rule 12, as the Second Circuit has suggested is appropriate. *See Reid*, 966 F.3d at 88–89, 89 n.6.   This Court would not be alone in sanctioning such aggressive, vexatious, and bad faith litigation tactics. *See, e.g.*, *Reus v. ETC Hous. Corp.*, 72 Misc. 3d 479, 487–88 (Sup. Ct. Clinton Cnty. 2021) (dismissing complaint and awarding costs and reasonable attorneys' fees).

## **CONCLUSION**

For all of the foregoing reasons, the Court should dismiss all of Plaintiff's claims and award Red Points the attorneys' fees and costs it incurred in fighting these frivolous allegations.

Dated:  New York, New York
        February 27, 2023

Respectfully submitted,

By:      */s/ Rachel Maimin*
         Rachel Maimin
         Michelle L. Goldman
         **LOWENSTEIN SANDLER LLP**
         1251 Avenue of the Americas, 17th Floor
         New York, NY 10020
         Tel:  212.419.6962
         Fax:  973.597.2551
         rmaimin@lowenstein.com
         mgoldman@lowenstein.com
         *Attorneys for Defendants Red Points*
         *Solutions SL and Red Points Inc.*